# In the United States Court of Federal Claims

No. 11-581C
(Filed: October 18, 2013)

*******************************************

|  |  |  |
|---|---|---|
| | * | |
| **UNITRAC, LLC** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | 28 U.S.C. § 1498; 28 U.S.C. § |
| **THE UNITED STATES,** | * | 2501, Statute of Limitations; 35 |
| | * | U.S.C. § 286. |
| Defendant, | * | |
| | * | |
| and | * | |
| | * | |
| **NORTHROP GRUMMAN SYSTEMS CORP.,** | * | |
| | * | |
| | * | |
| Third-Party Defendant. | * | |
| | * | |

*******************************************

## OPINION AND ORDER

In this suit, Unitrac, LLC ("Unitrac") alleges that the United States (the "Government") has made unlicensed use of its patents. Pending before the Court are two related motions filed by the Government and Northrop Grumman Systems Corp. ("Northrop) (collectively, "Defendants"). The Government's motion is styled as a "motion for summary judgment, or in the alternative, to dismiss," (Docket No. 41), while Northrop's motion is styled simply as a motion to dismiss. (Docket No. 40). The general point underlying both motions is that Unitrac filed its Complaint after the final date specified by the statute of limitations and the period of tolling, such that the Complaint should be dismissed.

As explained below, the Court concludes that Unitrac's claim accrued no later than August 22, 2003. Applying only the statute of limitations, this would result in a filing deadline of August 22, 2009. However, the Court also concludes that, pursuant to 35 U.S.C. § 286, the statute of limitations period was tolled from March 30, 2009 to November 18, 2010, a period of 598 days. Added to the six-year limitations period, and given the August 22, 2003, accrual date, the statute of limitations period closed on April 12, 2011. Unitrac did not file its Complaint in this Court until September 9, 2011, five months after the limitations period ran. Hence, the Court finds that Unitrac's Complaint was filed after the expiration of the statute of limitations, as modified by the statutory toll, and the Court therefore lacks jurisdiction over the Complaint. The

result is that Northrop's motion to dismiss is GRANTED, while the Government's motion to dismiss is DENIED, as moot, and the Government's motion for summary judgment is DENIED.

## I.  Background

### a.  Procedural History

Unitrac filed its Complaint in this case on September 9, 2011.  On October 3, 2012, the Defendants filed the instant motions.  Two days later, on October 5, 2012, they also filed motions for summary judgment, wherein both Defendants argued that Unitrac's asserted claims were indefinite pursuant to 35 U.S.C. § 112.  Briefing proceeded on the indefiniteness motions, and on April 30, 2013, the Court granted the Government's motion for summary judgment.

Briefing on the statute of limitations question, which is jurisdictional in this matter, *see John R. Sand & Gravel Co. v. United States*, 552 U.S. 134 (2008), did not proceed as quickly as the briefing on summary judgment.  Some discovery on this issue was necessary, such that briefing on the jurisdictional issue was not even completed by the time the Court issued its summary judgment decision.  For this reason, the Court's summary judgment order required the parties to file a joint status report to inform the Court as to whether the wished to complete briefing on the limitations issue before the Court entered judgment.  In the end, the Court determined that it would be more efficient to have the parties complete their briefing on the limitations issue.  The parties completed briefing on July 1, 2013.

### b.  Relevant Factual Background

Unitrac alleges that the Government has infringed two patents, U.S. Patent No. RE 40,659 (the "'659 Patent") and U.S. Patent No. RE 40,692 (the "'692 Patent").  These patents relate generally to a uniform system for verifying and tracking articles or objects of value.  According to the Complaint, the Government's alleged infringement is rooted in the Department of Defense's ("DoD") use of an Item Unique Identification ("IUID") System.  This system was mandated by DoD Directive No. 8320.03 (the "Directive"), dated March 23, 2003.  Compl. at ¶ 8.  Per the Directive, the IUID System was to be in place by January 1, 2004.  The goal of the system is to track tangible property, real property and other items of value in order to improve inventory control, logistics, maintenance, life-cycle tracking and item possession.  *Id.* at ¶ 9.

Since June of 2007, the parties have engaged in ongoing communications related to the patents-in-suit.  Throughout much of this time, Unitrac stated that its written correspondence was not intended to initiate an administrative claim under the Defense Federal Acquisition Regulation Supplement ("DFARS").  After nearly two years of unsuccessful negotiations, Unitrac requested that the DoD treat its previous written submissions as a written claim under DFARS.  *See* Gov't Ex. A 11, 43.  This conversion is significant for reasons that are discussed below.

Per Unitrac's request, the Government began its consideration of Unitrac's submissions as a DFARS claim.  On June 29, 2010, the DoD issued an initial determination which denied Unitrac's DFARS claim.  Pltf. Ex. A 444-447.  The initial determination indicated that Unitrac was entitled to seek reconsideration within thirty days.  Unitrac requested reconsideration and,

2

on November 18, 2010, the DoD issued a final determination wherein it rendered a final denial of Unitrac's claim.

## II.     Legal Standard for Motions to Dismiss

A plaintiff bears the burden of establishing jurisdiction. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction"). If subject matter jurisdiction is challenged, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds,* 846 F.2d at 747–48. The plaintiff must demonstrate jurisdiction by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748; *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969) (quoting *McNutt*, 298 U.S. at 189). When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence and resolve factual disputes over the jurisdictional facts. *Reynolds,* 846 F.2d at 747; *see also Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991); *Int'l Mgmt. Servs., Inc. v. United States,* 80 Fed.Cl. 1, 2 n. 2 (2007).

All cases that come before this Court are subject to a six year statute of limitations: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Although statutes of limitation are viewed as affirmative defenses in some situations, this particular statute of limitations is jurisdictional in this Court. *See John R. Sand*, 552 U.S. 134.

## III.     Discussion

Although the Govenrment's motion is styled to include the possibility of summary judgment, and Unitrac invested a large portion of its opposition to its summary judgment argument, it is clear that the summary judgment is inapposite here. As Northrop argued in its opening brief, (Docket No. 40 at 11), and Unitrac now agrees, (Docket No. 66 at 2), the Supreme Court's holding in *John R. Sand* renders the statute of limitations a jurisdictional issue in this court. 552 U.S. at 134. Hence, the Court does not consider the motions under the summary judgment standard posited by the Government, but instead under the typical standard which applies to jurisdictional challenges. That is to say, since the Defendants have challenged the Court's authority to exercise jurisdiction over this case, the burden is on Unitrac to satisfy the Court via preponderant evidence that jurisdiction is proper.

The Court's opinion proceeds as follows. The Court first discusses the parties' arguments regarding the accrual date of Unitrac's claim. It then turns to the dispute over the proper tolling period. The discussion concludes by putting these dates into the context of the statute of limitations.

3

### a. Unitrac's Claim Accrued in August of 2003

The parties present different arguments for how the Court should determine the accrual date. Northrop, for example, argues that the alleged accrual date in the Complaint—January 1, 2004—should control. The parties also dispute the actual date at which the IUID System became available to the Government. Finally, Unitrac argues that the IUID System was kept secret, such that it could not have known of the Government's infringement until a date long after the System was put into use. The Court addresses the arguments in turn.

### i. The Date Alleged in Unitrac's Complaint Does not Control

Northrop makes much out of the allegation in Unitrac's Complaint that the IUID System was to be incorporated by government contractors "as of January 1, 2004." Compl. at ¶ 10. This date, Northrop argues, establishes that Unitrac's claim accrued on January 1, 2004, and that the statute of limitations should begin running on that date.

Although it is tempting to accept this argument, the Court will not rely on this date. All three parties produced substantial extrinsic evidence with their briefing, and this evidence gives the Court pause in accepting January 1, 2004 as the accrual date. Moreover, because the Court allowed an extended discovery period in order to ascertain the various dates at issue in the pending motions, the Court feels that the evidence uncovered during discovery should be considered in ascertaining whether or not the Court truly possesses jurisdiction.

### ii. The Actual Accrual Date is August 22, 2003

Before it turns to the meat of this issue, and because this specific question is important to the overall question of jurisdiction, the Court must first address Northrop's argument that Unitrac's allegations of ongoing infringement do not alter the date of accrual. Specifically, Unitrac's Complaint alleges that the Government "continues to commit acts of patent infringement," Compl. at ¶¶ 14, 18, and that the Government "continues to infringe." Compl. Prayer for Relief at ¶¶ (A), (B). As Northrop asserts, ongoing infringement is irrelevant to this Court's jurisdiction in the context of the statute of limitations. *See Bissell v. United States*, 41 Fed. App'x 414, 416 (Fed. Cir. 2002). With respect to a patent taking, a cause of action arises under 28 U.S.C. § 1498(a) when the "accused [instrumentality] is first available for use, and it is when the use occurs that a license is considered to have been taken." *Decca Ltd. v. United States*, 544 F.2d 1070, 1082 (Ct. Cl. 1976) (internal citations omitted); *see also Starobin v. United States*, 662 F.3d 747, 749 (Ct. Cl. 1981). It is clear, then, that the Court's duty in light of the case law is to determine the earliest date on which the accused IUID System was first available for use by the Government. In other words, the Government's alleged ongoing infringement cannot justify jurisdiction simply because at least one act of infringement has occurred within the statute of limitations period.

With respect to the actual date of accrual, the briefs demonstrate little agreement between the parties as to when Unitrac's claim accrued. Northrop, for example, presents the earliest accrual date: August 22, 2003. The Government's opening brief indicates that the accrual date

was sometime in April of 2004.  Unitrac posits that the IUID System was not completed as of May 10, 2004.[1]

The burden is on Unitrac to prove that this Court has jurisdiction.  *See Reynolds*, 846 F.2d at 748.  In this instance, that means that Unitrac must demonstrate by preponderant evidence the date upon which its claim accrued.  Although the burden is not on the Defendants to demonstrate an accrual date, they have produced evidence that speaks to the date.

The evidence shows that Northrop made available to the Government a working system prototype by August 22, 2003.  Specifically, Northrop submitted two declarations which both indicate that Northrop began working on the IUID System in June of 2003.  *See* Glenn Elmen Declaration ("Elmen Decl.") at ¶¶ 4-5; Matthew Mills Declaration ("Mills Decl.") at ¶¶ 4-5.  By the end of June, Northrop had a nearly complete prototype.  Mills Decl. at ¶¶ 4, 7.

Based on Northrop's progress, the DoD issued a formal task order for the prototype IUID System on July 15, 2003.  Northrop Ex. A 64-65.  On July 22, 2003, Northrop conducted a successful demonstration for the Government.  Elmen Decl. at ¶ 6.  Northrop was instructed to make the IUID available on the GDSBeta Box[2] for a demonstration to more senior government personnel in Washington, D.C.  *Id.*  Also in July of 2003, the DoD issued a policy memorandum requiring all solicitations submitted on or after January 1, 2004, to include a UID requirement.  Northrop Ex. at A 35-60.

By August 2003, the prototype could execute its "core" functions—receiving, storing, tracking and retrieving information based on a UID—and it was available to the Government.  Elmen Decl. at ¶ 10; Mills Decl. at ¶¶ 5, 13-14.  After the Government tested the entire system, it provided Northrop with several requests for further refinement.  Northrop addressed all of the requirements by August 22, 2003, and the system remained available for Government use on the GDSBeta Box.  Mills Decl. at ¶ 14.

With the successful showing of the updated IUID System, the DoD issued an interim rule on October 10, 2003, requiring all contractors to provide UID information for all materials delivered on contracts executed after January 1, 2004.  Defense Federal Acquisition Regulation Supplement; Unique Item Identification and Valuation, 68 Fed. Reg. 58,631-01 (Oct. 10, 2003) (codified at 48 C.F.R. 252.211-7003).

Northrop continued to make minor changes to the system through November of 2003.  Elmen Decl. at ¶¶ 10-12.  According to Northrop, these minor changes did not give rise to a substantially different program; all of the critical functionality remained unchanged from the August 22, 2003, version.  The parties agree that, in May of 2004, the government's Wide Area Work Flow ("WAWF") application was integrated into the IUID System.

---

[1] Unitrac additionally argues that, even if the System was operations by May 10, 2004, its claim did not accrue because the IUID System was kept secret.  This argument is addressed below.  *See infra.*, III.a.iii.

[2] The GDSBeta Box is a server that is available to all government employees that have access to the correct IP address.  Thus, it can be accessed from any location over the internet.  Elmen Decl. at ¶ 7.

In its opening brief, Unitrac argues that all of this activity is irrelevant for purposes of the accrual date (despite the fact that its Complaint only discusses the Government's activities from 2002 to January 1, 2004). Instead, Unitrac claims that testing of the IUID system was not completed by July 16, 2004, and that the final "production" system was not up and running until August of 2004. Unitrac introduces a new argument in its sur-reply: it asserts that the IUID System was not completed in early 2004 because the WAWF was not integrated until May of that year. To this end, Unitrac's sur-reply invests heavily noting that various documents create a supposed distinction between the "IUID Registry" and the "IUID System."

As Northrop argues, the first point to be made with respect to these arguments is that *testing*, in and of itself, can constitute infringement. *See Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 19-20 (Fed. Cir. 1984) ("testing the assemblies can be held to be in essence testing the patent combination and, hence infringement. That the machine was not operated in its optimum mode is inconsequential: imperfect practice of an invention does not avoid infringement."); *see also Bissell v. United States*, No. 00-344C, 2001 WL 36400606, at *3-4 (Fed. Cl. Sept. 28, 2001) (the Government's unauthorized testing constitutes "use" under § 1498); *Hughes Aircraft Co. v. United States*, 29 Fed. Cl. 197, 218 (1993) (characterizing *Paper Converting* as concluding that "neither complete assembly nor complete testing was necessary to find infringement"). The evidence shows that a substantially completed prototype of the IUID System was made available—and tested—by the Government by August 22, 2003.

The real question with respect to accrual is whether the earlier versions of the IUID System are substantially different from the later versions *with respect to the patent claims*. This is where Unitrac has failed to meet its burden of proof. In its opening brief, for example, Unitrac concentrates heavily on the ongoing quality assurance, acceptance, security and functionality testing in order to establish a later accrual date. What Unitrac did not do is show the Court that any modifications made after August 22, 2003, substantially changed the IUID System with respect to the patent claims. Perhaps this failure is due to Unitrac's incorrect position that it was entitled to have evidence viewed under a summary judgment standard, but the reason for this failure is irrelevant.

Unitrac attempted to remedy this failure by introducing for the first time in its sur-reply the argument that the IUID System as it existed prior to the integration of the WAWF did not include a key claim element: a "means for transmitting a coded identifying number to said centralized computer data base."[3] Entirely aside from the fact that Unitrac failed to raise this issue in its first brief on the pending motions, Unitrac has offered no evidence that shows that the pre-WAWF versions of the IUID System lacked this functionality. Meanwhile, Northrop submitted evidence which tends to show that the IUID Registry, as it was called in some early documents, was stored on the GDSBeta Box in August of 2003 and that the August 2003 version could perform its core functionality of receiving, storing, tracking and retrieving "pedigree information."[4] *See* Mills Decl. at ¶¶ 5, 13-14; Elmen Decl. at ¶ 10. The evidence shows that this

---

[3] This language is included in claim 1 of the '659 Patent and claims 1 and 2 of the '692 Patent.
[4] Given Unitrac's late-raised assertion that the IUID System is different from the IUID Registry, the Court emphasizes here that the Mills Declaration makes clear that the IUID Registry was capable of performing the "core functionality." *See* Mills Decl. at ¶ 5.

"pedigree information" includes the "identifying number" referenced in the claim limitation cited by Unitrac. *See* Elmen Decl. at ¶ 5 (indicating that, among other data, "pedigree information" includes a Quantity Global Trade Item Number, Part Number and Serial Number). All told, the evidence shows that access to the GDSBeta Box enabled government officials to transmit an identification number to the centralized IUID database via the internet.

The result of all of this is that the preponderance of the evidence shows that the IUID System was in use "by or for" the Government by August 22, 2003. Unitrac's late assertion that introduction of the WAWF fundamentally changed the IUID System falls flat because the preponderance of the evidence shows that the WAWF was merely an additional mechanism for transmitting identification numbers to the IUID database.

### iii.  The Government's Use was not Secret

Unitrac attempts to delay this accrual date by taking the position that the Government concealed its infringement. As a general proposition, Unitrac argues that the DoD's use of the IUID System was concealed (admittedly lawfully), and that this concealment made the DoD's use inherently unknowable to Unitrac. Northrop contends that the Government's use was not concealed from Unitrac.

"In certain instances the running of the statute [of limitations] will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim." *Japanese War Notes Claimants Ass'n of Philippines, Inc. v. United States*, 373 F.2d 356, 358-59, 178 Ct. Cl. 630 (1967). Ignorance alone, however, is not enough to suspend the running of the statute. *Id.* at 359. Instead, a "[p]laintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Id.*

At the heart of Unitrac's argument is its position that the DoD only released information pertinent to the IUID System to certain government agencies and contractors. Unitrac further claims that the public would not have been able to locate or access the IUID System during the period of May 2004 to January 2004 via "traditional means, namely a Google search." (docet No. 63 at 29). Instead, Unitrac contends that it only became aware of the IUID System in April of 2005 when Edward Rose, the inventor of the patents-in-suit, learned that the DoD subscribed to EPCglobal[TM] Standards ("EPCglobal"), a service whose users Rose believed were infringing his patents.

Northrop, for its part, claims that Unitrac was on inquiry notice that it had a potential claim by no later than July 29, 2003. It was on this date that the Government published a memorandum (the "Memorandum") concerning the IUID System. Unitrac argues that the Memorandum, while public, contained insufficient information for Unitrac to discover its potential infringement claim.

The Court finds that the Memorandum was sufficient to put Unitrac on inquiry notice of its potential claim, thereby blocking its assertion that the DoD's use was concealed or otherwise unknowable. *See Japanese War Notes*, 373 F.2d at 359 (finding that when "plaintiff was on

7

inquiry," the statute of limitations was not suspended). The Memorandum is 23 pages long and it is rather detailed. For example, it states that the "database shall be capable of using the UID to retrieve the data record associated with the item represented by the UID." Northrop Ex. A 50. Even though the Court rejected Unitrac's heavy reliance on concatenation during the invalidity briefing, *see Unitrac, LLC v. United States*, 111 Fed. Cl. 36, 43-44 (2013), it is also telling that the Memorandum states that the IUID System "will machine-read the data elements and output the concatenated unique identified for onward transmission to the appropriate automated information system." *Id.* at A 44. There are simply too many references in the Memorandum that could have informed Unitrac that the DoD was at least playing in the same sandbox as Unitrac. Further, it is frankly shocking that Unitrac would claim it was put on notice of the Government's potential infringement by its mere subscription to EPCglobal,[5] but that the Government's detailed Memorandum did not suffice to put Unitrac on notice. The Court therefore concludes that the DoD's use was not concealed or inherently unknowable since significant detail was openly published on July 29, 2003. It is therefore inappropriate to suspect the accrual date based on Unitrac's secrecy argument.

### b. The Statutory Tolling Period is 598 Days

The six-year limitations period established by 28 U.S.C. § 2501 is modified by 35 U.S.C. § 286, which provides:

> In the case of claims against the United States Government for use of a patented invention, the period before bringing suit, up to six years, between the date of receipt of a written claim for compensation by the department or agency of the Government having authority to settle such claim, and the date of mailing by the Government of a notice to the claimant that his claim has been denied shall be counted as part of the period referred to in the preceding paragraph.

"The purpose behind the statute is to provide the Government time to carefully consider potential claims, and possibly correct its mistakes, before having to proceed with costly litigation." *Dow Chemical Co. v. United States*, 32 Fed. Cl. 11, 20 (1994) (Smith, J.) (*Dow I*), *aff'd in part, rev'd in part on other grounds*, 226 F.3d 1334 (Fed. Cir. 2004 (*Dow II*); *see also Fairchild Engine & Airplane Corp. v. United States*, 285 F.2d 131, 133 (Ct. Cl. 1961). The parties dispute both the date when this tolling should begin and the date upon which it should end.

With respect to the beginning of the tolling period, Unitrac's first contact with the DoD regarding the patents-in-suit occurred on June 5, 2007. However, it was not until March 30,

---

[5] Notably, it does not appear that Mr. Rose believed that *all* EPCglobal subscribers were infringing. To wit, the Declaration of Mark D. Lorusso ("Lorusso Decl."), the source of the evidence regarding Mr. Rose's suspicions about EPCglobal, indicates that despite suspicions EPCglobal or its "subscribers or providers were infringing the '659 and the '692 Patents," only "[o]ne EPCglobal subscriber, in particular," was sued before Unitrac turned its attention to the Government. Lorusso Decl. at ¶ 3. The point is that a mere subscription to EPCglobal, with nothing more, evidently did not equate to infringement, so the DoD's subscription was nothing more than the barest of hints that it might be infringing.

2009, that Unitrac informed the DoD that it wished to have all of its previous submissions converted into a DFARS claim. Unitrac argues that the June 5, 2007, date is the date at which the tolling period should begin. The Defendants, on the other hand, argue that it should begin on March 30, 2009.

The Court agrees with the Defendants. Although Unitrac did technically satisfy the tolling statute's writing requirement, Unitrac's position is untenable. The DoD has published DFARS Subpart 227.70, which provides a mechanism for a patent owner to submit a claim for infringement and it requires that the DoD notify a claimant if his claim is denied. *See* DFARS Subpart 227.7007. This regulation establishes a practical and consistent mechanism for submitting patent infringement claims to the DoD. Rather than following the regulation, Unitrac opted to try to work outside the regulation for well-nigh two years. Critically, the method Unitrac attempted provided the DoD no substantial opportunity to completely and finally deny Unitrac's claim.

In effect, Unitrac's position is that it should receive two bites at the statutory tolling apple: the statute of limitations should be tolled beginning on the date it first attempted extra-regulatory negotiations and, rather than ending at the time those negotiations fell through, it should continue through the period during which Unitrac actually followed DoD regulations. When taken together, the six-year limitation, the statutory tolling period, and DFARS Subpart 227.70 constitute the scope of the Government's waiver of sovereign immunity. Unitrac's argument attempts to expand this waiver, which is contrary to law. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("a waiver of the Government's sovereign immunity will be *strictly construed*, in terms of its scope, *in favor of the sovereign*.") (emphasis added). Thus, March 30, 2009—the date on which Unitrac converted its claim into a DFARS submission—is the starting date for the tolling period.

Next, the parties dispute the date on which the period should end. The Defendants argue that the June 29, 2010, initial determination ends the toll. Unitrac argues that the final determination, dated November 18, 2010, is the correct end date.

Here, the Court agrees with Unitrac. Although Unitrac relies upon *Dow I*, the Court does not believe it is necessary to rely on either decision to reach its conclusion here. When read in view of § 286, it is clear that the DoD's initial determination is not a "denial" of the administrative claim as it is contemplated in the statute. The statute plainly contemplates an *end* to administrative proceedings, and the initial determination here was clearly not the "end" of the proceedings.

The initial determination expressly considers the potential for ongoing proceedings:

> If you have any significant information not already presented that you believe warrants a conclusion other than the above, *you may request reconsideration of your claim. Any request for reconsideration must be submitted, in writing, to the DoD Office of General Counsel no later than thirty (30) days after the date of this letter.*

9

Pltf. Ex. A 447 (emphasis added).  Given that the goal of § 286 is to enable to Government to correct its mistakes before proceeding with costly litigation, this provision allowing Unitrac the opportunity to request reconsideration must be considered part of that mechanism: it expressly invites Unitrac to help the DoD correct any potential mistakes it may have made in its initial consideration of Unitrac's DFARS claim.

The November 18, 2010, letter, on the other hand, contains no such invitation.  The letter quite clearly makes the point that the DoD considers the issue settled: it closes with the statement that "[t]his is a final agency action."  Pltf. Ex. A 457.  It is at this point that Unitrac's claim is clearly and finally denied, and at which point the tolling period ended.

### c.  Unitrac's Complaint Was Filed After the Statute of Limitations Had Run

The Court concludes that the statute of limitations was tolled from March 30, 2009, to November 18, 2010.  This is a period of 598 days.  Added to the six-year period, and given the August 22, 2003, accrual, Unitrac should have brought its Complaint in this Court by April 12, 2011.  Unitrac did not file its Complaint until September 9, 2011—five months after the statute of limitations had run.

## IV.    Conclusion

For the reasons stated above, Northrop's motion to dismiss is GRANTED.  The Government's motion is DENIED, as moot.

In accord with the foregoing, the case is DISMISSED for lack of jurisdiction.  In the alternative, even if the Court possessed subject matter jurisdiction, it would grant judgment in favor of the Defendants for the reasons expressed in the Court's April 30, 2013, opinion.  Under either alternative, this case should be marked closed.  The Clerk is directed to enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge

10